NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN RE KRISTI E. DIMOGERODAKIS,

       DEBTOR(s)

SAXON MORTGAGE SERVICING, INC.

       APPELLANT,

v.

KRISTI E. DIMOGERODAKIS

       APPELLEE

Civ. Action No. 10-0004 (KSH)

On Appeal from:

Bankruptcy Case No. 04-23833 (DHS)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

**Introduction:**

    Saxon Mortgage Servicing, Inc. ("Saxon" or "appellant") brings this appeal of the Bankruptcy Court's order of August 2009 denying its cross-motion to reinstate/re-open a Chapter 13 bankruptcy proceeding. Saxon, the servicing agent for Deutsche Bank Trust Company Americas ("Deutsche Bank"), had argued that the debtor in the bankruptcy proceeding, Kristi Dimogerodakis ("debtor" or "appellee"), was unjustly enriched by Saxon's payment of $59,132 in real estate taxes and insurance costs following a foreclosure judgment on Dimogerodakis' property in Morristown, New Jersey. Judge Donald H. Steckroth, U.S.B.J. ("Judge Steckroth" or

1

"Bankruptcy Court"), heard oral argument on the cross-motion in June 2009, reserving judgment. In a written opinion issued on August 13, 2009 ("Op."), the Bankruptcy Court denied Saxon's motion, finding no cause to reopen. Saxon now appeals, arguing, *inter alia*, that the Bankruptcy Court committed reversible error of law. For the reasons stated herein, this Court denies Saxon's appeal and affirms the decision.

Dimogerodakis did not oppose Saxon's appeal.[1] The Court has jurisdiction pursuant to 28 U.S.C. § 158.

**Background and Procedural History:**

Dimogerodakis filed for Chapter 13 bankruptcy in the District of New Jersey on April 22, 2004. (Op. at 4.) In an October 31, 2007 order, the Bankruptcy Court authorized the sale of the real property to Nicholas Dimogerodakis. (Order of the Bankruptcy Ct. Authorizing Sale of Property, October 31, 2007 ("Sale Order") at 2.) The sale order stated that, "upon payment of the sum of $368,455 by the Chapter 13 Trustee, the secured claim of Saxon Mortgage Services, Inc., which is based on the foreclosure judgment that merged with the mortgage of Deutsche Bank. . . shall be satisfied in full." (Id.) The Sale Order further stated that, "when the above referenced funds are received by Saxon, it shall, within 30 days, issue a Warrant of Satisfaction for its foreclosure judgment, a Discharge of its Lis Pendens, a Dismissal of its Foreclosure Action and a Discharge of its Mortgage" and that "the Chapter 13 Plan shall be paid in full." (Id.)

---

[1] The Court's order of July 26, 2010 (D.E. 8) directed Dimogerodakis to file opposition to Saxon's appeal by August 9, 2010, or show cause as to why the Court should not deem the matter unopposed. Dimogerodakis filed no response, and the matter is deemed unopposed.

2

Under the Federal Rules of Bankruptcy Procedure, Saxon had "at least five days" to object to the proposed sale of the property, but it did not. (Op. at 11.) Nor did Saxon appeal the Bankruptcy Court's Sale Order. (Id.)

On November 30, 2007, the Chapter 13 trustee issued a final report and sent a payoff check to Saxon for $368,455, along with a letter advising that the check "represents the balance due" to Saxon" (Op. at 4.) The trustee also sent Dimogerodakis a letter on December 4, 2007, stating that, "you have successfully paid off your Chapter 13 Plan." (D.E. 5, App. at 127.) Saxon made no objection to the trustee's final report, but did not cash the pay-off check or issue the required documents, including a warrant of satisfaction for its foreclosure judgment. (Op. at 11-12.) The Bankruptcy Court issued a second order directing Saxon to comply with the Sale Order, but Saxon did not. (Id.) Saxon also did not respond to a March 6, 2008 letter from Dimogerodakis' counsel informing Saxon that it had not complied with sale Order and that the un-cashed payoff check had become stale-dated. (D.E. 5, App. at 132.) Nor did Saxon respond to a March 19, 2008 email from the Trustee requesting an immediate update. (D.E. 5, App. at 136)

On April 1, 2008, Dimogerodakis filed a motion to enforce the Bankruptcy Court's Sale Order and hold Saxon in contempt for failing to comply with its terms. (Op. at 3.) On April 16, 2008, Saxon filed a cross-motion to "reinstate/reopen, if necessary, bankruptcy proceeding *for the limited purpose to compel the debtor to reimburse Saxon Mortgage for Escrow Advances.*" (Saxon's Cross-Mot. ("Cross-Mot."))(emphasis added.) Saxon's cross-motion sought to compel Dimogerodakis to reimburse it for the $59,132 in escrow advances it made for payment of real

estate taxes and hazard insurance while the bankruptcy case was pending.[2]  (Cross-Mot. at 7.) Saxon argued that, under the Chapter 13 plan, Dimogerodakis was responsible for paying the taxes and insurance costs for the Morristown property, but had failed to do so, and therefore Saxon was entitled to recover the escrow advances it made under a theory of quasi-contract or unjust enrichment.  (Id. at 10-11.)  Saxon also noted that, if it had not made the payments, then Dimogerodakis would have been required to do so at the closing on the property.  (Id.)

At oral argument before Judge Steckroth in June 2009 on its cross-motion, Saxon contended for the first time that it had never consented to the Sale Order.  (Op. at 11.)  Also for the first time, Saxon offered a theory for recovery of the escrow advances based on a previous order of the Bankruptcy Court order that pre-dated the Sale Order and provided in part that the "parties had to agree on the payoff because the basis of the plan was to pay off the final judgment of foreclosure."  (Tr. or Oral Argument, June 10, 2009 ("Tr."), D.E. 5, Attach. 2 at 5:20-22.)

### a. Judge Steckroth's Opinion Denying Saxon's Cross-Motion:

Judge Steckroth denied Saxon's cross-motion to reopen on several grounds.  He noted that under the merger doctrine, which is followed by New Jersey courts, "once a foreclosure judgment is obtained, 'the mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished.'" (Op. at 6)(quoting *In re Roach*, 824 F.2d 1370, 1377 (3d Cir. 1987)).  As a consequence, a foreclosure judgment itself "provides the amount needed to satisfy the mortgage."  (Op. at 6.)  In Dimogerodakis' case, this meant that her "mortgage

---

[2] The Bankruptcy Court's order of July 17, 2008 resolved debtor's motion for contempt and directed Saxon to comply with the Sale Order, but did not resolve Saxon's cross-motion.  (Op. at 194-95.)

merged into the judgment and Saxon is not entitled to recover post-judgment advances."³ (Op. at 6 and 8.)

Judge Steckroth next considered, *sua sponte*, whether Saxon would fall into an exception to the merger doctrine identified by the Third Circuit in instances where "'the mortgage *clearly evidences* . . .intent to preserve the effectiveness of that provision post-judgment.'" (Op. at 6)(quoting *In re Stendardo*, 991 F.2d 1089, 1095 (3d Cir. 1993)). In that case, *In re Stendardo,* which involved an appeal of a decision from the United States District Court for the Eastern District of Pennsylvania and was based on Pennsylvania law, the Third Circuit held that there had to be clear and unambiguous language that the obligation to pay taxes and insurance would survive the mortgage's merger into the foreclosure judgment. (Id.) With respect to Dimogerodakis' mortgage, Judge Steckroth found no such language "entitl[ing] Saxon to fall under the Third Circuit's exception to the merger doctrine." (Op. at 8.)

Judge Steckroth also held that Saxon was not entitled to recovery for post-judgment advances based on a theory of quasi-contract or unjust enrichment. Saxon's argument regarding unjust enrichment had relied mainly on *Resolution Trust Corporation v. Griffin*. 290 N.J. Super. 88, 89 (Ch. Dv. 1994). *Resolution Trust* held that a foreclosing bank was not entitled to reimbursement from surplus funds for tax and insurance payments made after the entry of a final foreclosure judgment but before a Sherriff's sale. The court in that case found that "[o]ne of the legal consequences of the final judgment is that the mortgage itself no longer has legal vitality" and that because the bank had "received what it asked for in applying for the final judgment and

---

³ Saxon's brief in support of its cross-motion acknowledged that the merger doctrine applied to the case. (Cross-Mot. at 6.) However, Saxon argued that "despite the merger doctrine [a] mortgagee *may* recover under the theory of quasi-contract or unjust enrichment if the mortgagee advanced money for taxes and insurance after a final judgment of foreclosure was entered, but before the Sheriff's sale on the property." (Cross-mot. at 7.)

writ of execution. . . [it] has only itself to blame if it is out of pocket." *Id.* at 92-93.  Although *Resolution Trust* did note that a court "may amend the judgment if deemed right and equitable," the court also stated that once the sale has taken place, the sheriff must comply with the terms of the sale.

Judge Steckroth reasoned that Saxon, like the bank in *Resolution Trust*, had only "itself to blame for not asking to have the [foreclosure judgment] amended or appealing the Sale Order or the final report issued by the Trustee."  He also found that, under Third Circuit authority and the Bankruptcy Code, he could infer acceptance of a plan by a secured creditor from the "absence of an objection." (Op. at 11)(citing *In re Szostek*, 886 F.2d 1405, 1414 (3d Cir. 1989).  And to the extent that *Resolution Trust* supported Saxon's argument that a judgment could be amended post-sale, Judge Steckroth found that case distinguishable because the debtor in *Resolution Trust* was the *buyer* of the foreclosed property—and thus held title to the property both before and after the sale—whereas Dimogerodakis was "no longer the legal owner of the property" after the sale.

Judge Steckroth also concluded that Saxon was not entitled to recover its post-judgment advances under an unjust enrichment theory because Dimogerodakis had not been unjustly enriched.  (Op. at 9.)  Whatever benefits Dimogerodakis received from the post-judgment advances "were incidental to Saxon's preservation of its own interest because [Dimogerosakis] no longer had an obligation to pay taxes or insurance" after the foreclosure, whereas Saxon's payment of those expenses had "protected its own interest in the property."  (Op. 9-10.)  Furthermore, Saxon made its escrow advances between January 2004 and January 2008, and therefore had had "four years to bring an action to recover the advances prior to the close of this case."  As a creditor, Saxon was "expected to take an active role in protecting their [its] claims"

and "cannot simply sit on its rights," and yet Saxon never endeavored to collect the escrow advances until the time of its cross-motion. (Op. at 11)(internal citation omitted.)

Finally, Judge Steckroth highlighted the overriding importance of providing a "fresh start" to debtors in a Chapter 13 proceeding by ensuring the finality of a plan not subject to change. He noted that the Third Circuit had "gone as far as to state that finality is even more important than actual compliance with the Bankruptcy Code." (Op. at 10)(citing *Szostek*, 886 F.2d at 1413.) In *Szostek*, the Third Circuit held that:

> the purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of the debtors were not complete and absolute; that if courts should relax provisions of law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated. (886 F.2d at 1409.)

**b. Saxon's Appeal**

Saxon's appeal argues that the Bankruptcy Court committed reversible error by (1) incorrectly applying the case of *In re Sternardo* in its discussion of the merger doctrine and (2) not binding Dimogerodakis to a provision in an earlier order that the mortgage payoff be "consensually agreed upon." (Appellant's Br., Preliminary Statement.) With regard to the second claim, Saxon argued that Dimogerodakis should be bound by the Bankruptcy Court's order of July 24, 2007 ("July 2007 Order"), which resolved Saxon's motion to vacate the automatic stay order in the case. (Appellant's Br. at 1.) The July 2007 order stated in part that "the Secured Creditor's lien on the property shall remain until the Secured Creditor receives and applies the mutually agreed upon funds for the payoff of its mortgage." (App. at 14.)

**Standard of Review:**

A district court sits as an appellate court in bankruptcy cases, and reviews a bankruptcy court's decision to reopen a case on an abuse of discretion standard. *Donaldson v. Bernstein*,

104 F.3d 547, 551 (3d Cir. 1997) (citing *Matter of Case*, 937 F.2d 1014, 1018 (5th Cir.1991)); s*ee also In re United Healthcare System, Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (holding that a district court reviews a bankruptcy court's "legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof")(internal citation omitted).

**Discussion:**

Pursuant to 11 U.S.C. § 350(b), a bankruptcy case "may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." A bankruptcy court exercises broad discretion in deciding whether to reopen a case. *In re Zinchiak*, 406 F.3d 214, 223 (3d Cir. 2005).

The Court notes initially that Saxon's appeal does not concern the Bankruptcy Court's Sale Order, which set what Saxon was to paid, but rather concerns the August 2009 order denying Saxon's cross-motion to re-open the bankruptcy proceeding.

In his decision, Judge Steckroth cited *In re Stendardo* for the proposition that an exception to the merger doctrine exists where a mortgage contains "clear language indicating that the obligation to pay taxes and insurance will continue following the merger of the mortgage into the foreclosure judgment." (Op. at 6.) Saxon argues that this was reversible error because *In re Stendardo* was "based entirely on the Pennsylvania state foreclosure and quasi-contract law" and therefore is "inapplicable when applied to New Jersey foreclosure actions." (Appellant's Br. at Preliminary Statement and 7.)

It is true that *In re Sternardo* deals with underlying Pennsylvania bankruptcy law. However, Saxon fails to acknowledge that the Third Circuit makes clear in *In re Stenardo* that both Pennsylvania and New Jersey follow the merger doctrine. 991 F.2d at 1095. Furthermore,

Judge Steckroth's opinion discusses another Third Circuit case, *Youngman v. Fleet Bank, N.A.* (*In re: A & P Diversified Technologies Realty, Inc*.), 467 F.3d 337 (3d Cir. 2006), which holds:

> Although we decided *Stendardo* applying Pennsylvania law, we predict that the Supreme Court of New Jersey would find the exception to the merger doctrine, as we explained it in *Stendardo*, similarly applicable in New Jersey. *See In re Winogora*, 209 B.R. 632, 636 n. 1 (Bankr. D.N.J. 1997) ("Although *Stendardo* was based on Pennsylvania law, it cited *Roach* for the proposition that under the law of both states [Pennsylvania and New Jersey] a mortgage merges into a foreclosure judgment. Because the merger doctrine was the basis for *Stendardo*'s holding that mortgage provisions for taxes and insurance no longer exist after judgment, *Stendardo* is binding in chapter 13 cases involving New Jersey real property as well.") (citation omitted). 467 F.3d 337 at 342.

Judge Steckroth's consideration of *In re Stenardo* thus is not inapt. But more crucially, Judge Steckroth did not base its decision to deny Saxon's cross-motion on *In re Stenardo*; rather, he relied on that case in order to determine whether Saxon would be entitled to an *exception* to the merger doctrine. To the extent that Judge Steckroth found that Saxon was barred from recovering its escrow advances because of the merger doctrine, Saxon actually stood to benefit from his application of *In re Stenardo* to the instant case.

Saxon's argument regarding the July 2007 Order's provision that the payoff be "mutually agreed upon" also fails for a number of reasons. This Court notes that Saxon did not brief this issue in its cross-motion to reopen, and instead raised it for the first time at oral argument. At the time, the Bankruptcy Court questioned why Saxon never timely objected to the Sale Order, which contained the final payoff figure for mortgage, and observed that:

> We both probably know the answer, because your client probably was sleeping and then woke up six weeks later and said oh, my gosh, that's not the right number, so we are not going to do what the [Sales Order] says. (Tr. 10:1-6.)

In his written opinion, Judge Steckroth noted again that Saxon never appealed the Sale Order, and that instead had refused to obey it, as well as a second order directing it to comply. The first time that Saxon objected to the Bankruptcy Court about the Sale Order was "at oral

9

argument on its cross-motion." (Op. at 11.)  As for the escrow advances, Saxon could have brought an action to recover them during the four years prior to the closing of the case, but never did, and "offered no substantive reason why the claim for advances was not made until. . . over four years after the initial advances were made and six months after the Sale Order was entered." (Op. at 11-12.)

Judge Steckroth's reasoning was sound.  When Saxon moved before Judge Steckroth to reopen the case, it did so based on a theory of unjust enrichment theory.  (Cross-Mot. at 8.) Saxon's brief never mentioned its alternate theory that the payoff had to be mutually agreed upon, and Saxon did not raise that theory to the Bankruptcy Court until oral argument in June, 2009.  Saxon's mutual consent theory is, in essence, an argument that the payoff amount in the Sale Order was incorrect.  But Saxon never timely appealed the Sale Order.  The "mutual consent" argument was not properly before the Bankruptcy Court at that time, just as it is not properly before this Court on Saxon's appeal of Judge Steckroth's decision denying Saxon's cross-motion to reopen based on a theory of unjust enrichment.

Saxon cannot say here that it was taken by surprise when it did not recoup its escrow advances from Dimogerodakis.  Saxon sat on its rights, and this Court will not now allow Saxon to transform its appeal of the denial of its motion to reopen into an appeal of the Sale Order that it never took.  As Judge Steckroth noted, a key feature of Chapter 13 plans is finality, which "allows debtors and other parties to take part in a plan which will not be subject to change." (Op. at 10.)  Nothing in the record suggests that Judge Steckroth abused his discretion in finding cause did not exist to reopen and in denying Saxon's cross-motion, which would have disturbed that all-important finality.

10

**Conclusion:**

For the reasons stated above, this Court finds that the Bankruptcy Court neither abused its discretion nor committed error of law in denying Saxon's cross-motion to reinstate/reopen. Saxon's appeal [D.E. 1] is denied, and the Bankruptcy Court's order of August 13 2009 is affirmed.

Date:  April 11, 2011                                              \s\Katharine S. Hayden
                                                                                    Katharine S. Hayden, U.S.D.J.